This is a mandamus proceeding to review certain rulings of the trial court in setting aside a sale of land and later confirming a sale to an upset bidder allegedly without proper notice to the original highest bidder.
A bill to sell for division two parcels of land was filed in the Circuit Court of Tuscaloosa County in August, 1972. The larger parcel (Parcel A) contained approximately 340 acres, and the second parcel (Parcel B) contained approximately 7 1/2 acres.
The only objections raised involve Parcel A. Parcel B was sold to bidders not involved in this proceeding.
On June 11, 1975, Judge Nicol ordered the property to be sold by the register under sealed bids. Thereafter, pursuant to the order of the court, the register advertised the sale for three successive weeks in a newspaper of general circulation in Tuscaloosa County. On July 23, 1975, the bids were opened and the petitioner, James E. Spiller, Jr., was certified as having submitted the highest bid ($72,006.66) on Parcel A, according to the register's report. Additionally, the register certified that in his opinion the price bid for Parcel A reflected its fair and reasonable market value and that the sale was due to be confirmed.
Thereafter, on August 7, 1975, a hearing was held to consider the confirmation of the sale. The court's order found that the petitioner's bid was less than the reasonable market value of the property and should not be confirmed. The court further found that the fair and reasonable market value of the property was not less than $85,000.00. He found that petitioner, who had been the high bidder at the sale, had rejected any consideration of paying $85,000.00 and that the second highest bidder was willing to pay the fair and reasonable value of the property. Therefore, the court rejected the results of the sealed bid sale and ordered a new private sale to Leon Patton, Robert E. Spiller, Jr., and P.L. Spiller after finding that all bidders had been contacted and that this was the only bid of $85,000.00 which had been made.
On August 8, 1975, petitioner filed a motion to intervene in said cause alleging that he did not have proper notice of the confirmation hearing and that a private sale had not been previously authorized by the court. The motion was set for hearing on August 19, 1975.
At this hearing petitioner requested the court to (1) confirm his original bid, (2) set aside the upset bid of $85,000.00 as it did not comply with the court's order or (3) order a public sale at which he would begin the bidding at $87,500.00, which sum had been paid into court.
On September 19 the court denied petitioner's motion to intervene, as well as other motions orally made before the court at the hearing. On October 29, 1975, petitioner filed a petition for writ of mandamus in this court. A rule nisi was issued.
There are two legal principles that run through the law of judicial sales and sometimes appear to conflict. The first principle is as follows:
 ". . . [W]here the sale is to a stranger and fairly conducted, without fraud or mistake, inadequacy of price alone will not suffice to set the sale aside unless so grossly disproportionate to the real value as to amount to fraud. Harduval v. Merchants' Mechanics' Trust Savings Bank, supra, 204 Ala. [187] at page 188, 86 So. 52.
 "This is the general, underlying principle and based on public policy, recognizing that to adopt a rule of setting aside sales because of a subsequent, advance offer would chill the bidding and render judicial sales generally unstable, thereby resulting in discouraging bidders and diminishing the amounts realized. Bethea v. Bethea, 136 Ala. 584, 34 So. 28; 35 C.J. 105, § 170." Campbell v. Carter, 248 Ala. 294, 296, 27 So.2d 490, 491 (1946). *Page 1115 
See also Sieben v. Torrey, 252 Ala. 675, 677, 42 So.2d 621, 622
(1949); Martin v. Jones, 268 Ala. 286, 288, 105 So.2d 860, 863
(1958).
The second principle is that
 ". . . [I]n a sale of this kind [for division] the redemption statutes give no protection to the owners and accordingly it is the duty of the court to see that a reasonably fair price is obtained before confirming the sale. . . ." Berman v. Patton, 249 Ala. 317, 319, 31 So.2d 134, 136 (1947).
See also Roy v. O'Neill, 168 Ala. 354, 359-60, 52 So. 946, 948
(1910); Copeland v. Giles, 271 Ala. 302, 304, 123 So.2d 147,149 (1960).
The seeming conflict between these two legal principles was discussed and explained on Roy v. O'Neill, supra:
 "At first sight there seems to be some confusion in the cases as to the principles which should control, in a court of equity, in regard to affirming, or refusing to affirm, sales made under its orders; but the seeming conflict may be to a great extent explained by the fact that some of the cases relate to sales under mortgages, or creditors' bills, or other proceedings to enforce the collection of a debt.
. . . . .
 "When the court, in the progress of administration, grants an order for the sale of the lands of the estate, it seems that a different principle applies. The rights of no creditor to the enforcement of his claim is involved, and it seems proper and equitable that the court should see that a reasonably fair price is obtained, before confirming the sale. Accordingly, section 2642 of the Code of 1907 provides that the court must be satisfied not only `that the sale was fairly conducted,' but also that `the land sold for an amount not greatly less than its real value,' before confirming the sale.
 It is true that said section relates to proceedings in the probate court; but this court has held in this case, when before this court, at a previous term, that the requirements of the Code in ordering sales of land in the probate court must be complied with, in the chancery court (Roy v. Roy, 159 Ala. 555, 48 So. 793), and, aside from that decision, as the chancery court is making the sale for the same purpose, and the same reasons apply, it would at least furnish a rule to guide the discretion of the chancellor. Accordingly, in sales made by order of the probate court, it has been held that the sale is incomplete and rests in negotiation, until confirmed, and that the court is the vendor, and it may reject the offer `if the sale has not been fairly conducted, * * or if the price is disproportionate to the value of the lands,' etc." (Citations omitted). 168 Ala. at 358-60, 52 So. at 947-48.
Although O'Neill involved an order for sale in the progress of an administration of an estate, the same principles apply in partition sales. Copeland v. Giles, supra.
There have been two cases involving partition sales sinceO'Neill which have adopted the language of the first principle,Sieben v. Torrey, supra, and Martin v. Jones, supra. In those cases, however, the court was merely affirming the discretion of the trial court in refusing to set the sale aside.
This court combined the two principles and made probably the best statement of the law in Campbell v. Carter, supra, which involved a partition for sale in connection with the administration of an estate:
 ". . . While we have said that in such a proceeding `the court should see that a reasonable fair price is obtained, before confirming the sale' (Roy v. O'Neill, 168 Ala. 354, 52 So. 946, 948), the same policy against avoiding such sales because of a subsequent advance offer inheres and, if the court is satisfied the sale was fairly conducted and the land sold for a price not greatly less than its real value, the purchase price having been paid or properly secured, the sale should be confirmed." (Citations omitted). 248 Ala. at 296, 27 So.2d at 491.
We would conclude from the above mentioned cases that a court should not *Page 1116 
refuse to confirm a partition sale if a reasonably fair price is obtained. However, if after considering all of the surrounding facts and circumstances, it is convinced that the price obtained was not a reasonably fair one, then it is within the court's discretion to order a new sale. Taylor v. Wilson,233 Ala. 182, 184, 170 So. 833, 835 (1936). "Each case of this kind must rest upon its own bottom." Berman v. Patton, supra,249 Ala. at 319, 31 So.2d at 136.
In the instant case we are not willing to hold the court abused its discretion in finding that the petitioner's bid was less than the reasonable market value and in refusing to confirm the bid. However, we do think the court abused its discretion in ordering a private sale to the second highest bidder without giving the petitioner an opportunity to raise his bid. It is true that the court found that the petitioner had rejected any consideration of paying a higher bid but this rejection came in a conversation petitioner had with an attorney for one of the landowners. In that conversation the attorney suggested to him that the court would probably not confirm the sale and that petitioner should raise his bid to $85,000.00. At that time petitioner had no way of knowing for certain that his bid would not be confirmed. After the court refused his original bid, petitioner was given no opportunity to prepare and submit a new bid. The petitioner was the highest bidder at the original sale, and we think this entitles him to certain considerations.
 "While the sale is not complete and rests in negotiation until confirmed, yet it is recognized that the purchaser assumes burdens by bidding and having the property `knocked off' to him at the sale, and likewise, with the burdens placed upon him by the law, he acquires rights thereunder. He is regarded as the owner from the day of his purchase; bearing the loss, if the thing sold perishes, or deteriorates in value, and entitled to any appreciation in value, or accretions to the thing, during the time necessarily intervening between the sale and the confirmation. From the `day of purchase, until the decree of confirmation, the purchaser becomes a quasi party to the cause in which the decree of sale was rendered, subject, as such, to the decrees and orders the court may render in reference to the sale, its vacation, or confirmation.'" (Citations omitted.) Taylor v. Wilson, supra, 233 Ala. at 184-85, 170 So. at 835-36
(1936).
In the present case, the petitioner should have been given time to submit a new bid after the court refused to confirm his original bid. As it was, the second highest bidder was given a chance to bid again, but the highest bidder was not.
The court, in attempting to justify its action, relies on the case of Deverell v. Horton, 285 Ala. 588, 234 So.2d 879 (1970). In Deverell there was a partition sale in which the high bidder submitted a bid of $13,000.00. An exception was filed and the court heard argument on the exceptions. At the conclusion of the arguments, the court continued the hearing on the exceptions and ordered that any of the parties to the proceeding could obtain a firm offer from a prospective purchaser.
The court later accepted a new higher bid by the original high bidder. The important point to note in Deverell is that the court did give all parties a chance to submit a higher bid.
We think that in the present case all of the parties to the bidding should have been given an opportunity to prepare and submit a higher bid. This is consistent with both our prior decisions in these cases and the fundamentals of fair play.
The court suggested in its decree of June 11, 1975, that, in the event the sale by sealed bids was not approved, it would order a new sale at public auction. Therefore, we direct the court to set aside the sale of Parcel A and order a new sale at public auction with proper notice. The bidding at public auction should begin with the $85,000.00 bid of Mr. Leon Patton et al. Since the $85,000.00 of Mr. Patton et al. has been paid to the register, this money should remain on deposit in an appropriate interest-bearing *Page 1117 
account unless and until such time as a higher bid is received at public auction.
If Mr. Patton et al. are not the highest bidder at public auction, the $85,000.00 (along with any interest which may have accrued) should be returned to Mr. Patton et al. and the deed previously given by the court to them should be declared void.
WRIT OF MANDAMUS AWARDED.
HEFLIN, C.J., and BLOODWORTH, FAULKNER and EMBRY, JJ., concur.